**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KIMBERLY KENDALL,**

    **Petitioner,**          **CASE NO. 2:09-CV-126**
                                     **JUDGE GREGORY L. FROST**
**v.**                             **MAGISTRATE JUDGE E.A. PRESTON DEAVERS**

**WARDEN, ROSS CORRECTIONAL
INSTITUTION,**

    **Respondent.**

**<u>ORDER and
REPORT AND RECOMMENDATION</u>**

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant Petition, Respondent's Return of Writ, Petitioner's Traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request for a stay of proceedings pending a decision from the United States Court of Appeals for the Sixth Circuit in *Hooks v. Sheets,* 603 F.3d 316 (6th Cir. April 27, 2010), is **DENIED**, as moot.

**FACTS and PROCEDURAL HISTORY**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> [O]n October 28, 1999, defendant's daughter, Amber Mansperger, was hit by a truck, requiring Amber be taken to a hospital. While she was at the hospital, Amber revealed to a nurse she had been molested.
>
> As the evidence revealed, during the summer of 1994, Amber lived with defendant, defendant's boyfriend, Richard Rowland, her sister, Pamela, her brother, Roger, and her sister, Krista. Rowland began molesting Amber when she was eight years of age; defendant began to participate sometime later. Amber testified that at approximately 9:30 one morning, defendant came into her room and said, "let's go into the bedroom and make Dick-put Dick into a good mood." (Tr.

48.) Amber followed her mother into the bedroom, not knowing what was to ensue. Rowland was lying asleep on the bed. Defendant shut and locked the door, and pulled the sheet off Rowland who was naked. Defendant started to perform oral sex on Rowland, telling Amber to watch. Amber tried to leave the room, but was not tall enough to reach the lock on the door. Defendant then told Amber to do what she just did. Amber performed oral sex on Rowland, and then "made [herself] get sick." (Tr. 52.) Defendant opened the door and let Amber go back to her bedroom.

On another occasion, while Amber lay in her bed, defendant asked her to watch a movie in defendant's room. Amber complied. After watching the movie for approximately one-half hour, defendant pulled out a magazine that showed pictures of people having sex. Defendant asked Amber to look at the magazine so Amber "would know how to do it when [she] got older." (Tr. 60.) Amber refused. Defendant next put a rubber penis in her mouth and told Amber to watch. Defendant then obtained an egg-shaped metal object with a string and a box attached. When Amber got up to go to the bathroom, defendant pulled down Amber's pants, inserted the object into Amber's vagina, and turned on the control box. Amber testified that it hurt and made her bleed. She removed the object and threw it against a mirror.

Krista, defendant's oldest daughter, testified that in July 1997, "my mom came and asked me to lose my virginity to Dick and she wanted me to have a baby with him because she could not have any kids and she wanted to have a baby to raise." (Tr. 131.) Krista refused. Defendant did not press the issue.

Toward the end of July 1997, Rowland called Krista into the bedroom; Krista stated that this was not unusual. Rowland also called defendant into the bedroom. Defendant came in, shut the door, locked it, and stood in front of the door. Rowland told Krista "[she] was going to have sex with him whether [she] liked it or not." (Tr. 132-133.) Krista said no, and looked to defendant who said, "better do what he says." Although others were in the house at the time, she did not yell for help because she was afraid, Rowland having told her if she yelled or tried to fight him he would kill her. Rowland then forced Krista onto the bed. Defendant held Krista's arms down while Rowland raped Krista.

Krista testified that on another occasion defendant came into her room and told her "to go deal with your father." (Tr. 137.) Krista

2

> understood the statement to mean she should have sex with Rowland. Krista went into the room and was ordered to remove her clothes. Rowland told her to lay on the bed. Defendant came over, laid on the bed beside Krista and fondled Krista's breasts and vagina. Krista was crying and telling defendant to stop. Rowland told Krista to touch defendant like she was touching Krista. Krista refused. Rowland became angry, told defendant to leave the room, and said, "I'll deal with the little bitch myself." (Tr. 139.) He then raped Krista. Krista testified Rowland raped her two to three times a week. Although defendant did not participate, she would often retrieve Krista to have sex with Rowland.
>
> Testimony indicated Rowland was a violent man who physically abused defendant. Both Amber and Krista were afraid to tell anyone about the incidents because Rowland threatened he would kill them if they did. Rowland had guns in the house, and he carried a knife with him.
>
> Those acts gave rise first to a multi-count indictment against defendant, and then to a second, single count indictment. The indictments were tried together by court order. Following a jury trial in which the jury found defendant guilty of rape and felonious sexual penetration, the trial court sentenced defendant accordingly.

*State v. Kendall*, Nos. 00AP-1098, 00AP-1099, 2001 WL 726685 *1-*2 (Ohio App. 10th Dist. June 29, 2001). The trial court sentenced Petitioner to life incarceration, such sentence to be served consecutively to a nine year term, and declared Petitioner to be a sexual predator. *Exhibit 2 to Return of Writ*.

After a jury trial, Petitioner also was found guilty in Case Number 00 CR 3238 on one count of felonious sexual penetration. The trial court imposed life incarceration, such sentence to be served concurrently with Petitioner's sentence in the prior case, and declared her to be a sexual predator. *Exhibit 4 to Return of Writ.*

Petitioner filed timely appeals, which were consolidated for review by the state appellate

3

court. *Exhibit 6 to Return of Writ.* She raised the following assignments of error:

> I. THE TRIAL COURT ERRED WHEN IT SUSTAINED THE APPELLEE'S MOTION OF JOINDER OF A NEW INDICTMENT, THE VERY DAY OF TRIAL, WITH A PENDING INDICTMENT, OVER APPELLANT'S OBJECTION.
>
> II. THE TRIAL COURT ERRED WHEN IT FAILED TO DISMISS COUNT 1, CASE NO. 00 CR 3238, BASED ON THE STATUTE OF LIMITATIONS.
>
> III. THE TRIAL COURT ERRED WHEN IT OVERRULED THE APPELLANT'S OBJECTION TO SUBMISSION OF STATE'S EXHIBIT 1, DOCUMENTS CONCERNING HOTEL RECEIPTS.
>
> IV. THE TRIAL COURT ERRED WHEN IT ALLOWED TESTIMONY CONCERNING STATEMENTS PURPORTED TO BE MADE BY THE APPELLANT WHICH WERE NOT PROVIDED TO COUNSEL FOR APPELLANT PRIOR TO TRIAL.
>
> V. THE VERDICT IS INSUFFICIENT, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO RULE 29 AT SEVERAL STAGES OF THE TRIAL SHOULD HAVE BEEN SUSTAINED.

*Id.* at *2. On June 29, 2001, the appellate court affirmed the trial court's judgment. *Id.* Still represented by counsel, Petitioner filed a timely appeal to the Ohio Supreme Court. On October 24, 2001, the Ohio Supreme Court dismissed the appeal. *State v. Kendall*, 93 Ohio St.3d 1459 (2001).

Meanwhile, again represented by counsel, on September 27, 2001, Petitioner filed an

application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *See State v. Kendall*, Nos. 00AP-1098, 00AP-1099, 2002 WL 1477209 (Ohio App. 10th Dist. July 11, 2002).

> In her application for reopening, defendant contends her court-appointed appellate counsel was ineffective in failing to have prepared a full transcript of the trial court proceedings. Defendant moved this court to "stay" her App.R. 26(B) application until the remainder of the trial court proceedings could be transcribed and her new appellate counsel could review the transcript and prepare assignments of error. On December 12, 2001, this court granted defendant time to procure the complete transcript.
>
> Defendant subsequently filed the transcript of the August 4, 2000 sentencing and sexual predator determination hearing on which she premises the following two assignments of error:
>
> 1. THE TRIAL COURT'S DESIGNATION OF MS. KENDALL AS A SEXUAL PREDATOR VIOLATED HER RIGHT TO DUE PROCESS BECAUSE IT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
>
> 2. THE TRIAL COURT FAILED TO SATISFY THE STATUTORY REQUIREMENTS FOR IMPOSING A CONSECUTIVE SENTENCE. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.

*Id.* at *1. On July 11, 2002, the appellate court granted Petitioner's application to reopen the appeal, but only as to the trial court's imposition of consecutive sentences. *Id.*[1] As summarized by the state appellate court:

> The state conceded that the trial court had failed to make the required findings on the record for imposition of consecutive sentences under

---

[1] On October 10, 2009, the state appellate court issued a *nunc pro tunc* decision replacing its July 11, 2002 decision, effective as of that date, and replacing the victims' names with initials. *State v. Kendall*, Nos. 00AP-1098, 00AP-1099, 2009 WL 3748310 (Ohio App. 10th Dist. Oct. 10, 2009).

pre- *Foster* sentencing law. We reversed and remanded on this issue only. *State v. Kendall,* Franklin App. No. 00AP-1098, 2002-Ohio-3557.

On remand, the trial court held a new sentencing hearing, again imposing a life sentence on the rape with force count, a reduced sentence of five years on the second rape count (reduced from nine years), to be served consecutively, and a further nine-year sentence on the third rape count to be served concurrently. The court then imposed a life sentence on the count of felonious sexual penetration with use of force to run concurrent with the rape life sentence.

After appellant's appeal had been filed from this last sentencing hearing, the Supreme Court of Ohio issued its decision in *Foster.* We accordingly disposed of the appeal from the second sentencing hearing by summarily remanding the case for yet another sentencing hearing applying the law set forth by the Supreme Court of Ohio in *Foster*. The trial court then imposed an identical sentence, and [Petitioner filed an appeal raising the] following assignments of error:

ASSIGNMENT OF ERROR I

The trial court violated Revised Code Section 2929.11 by failing to consider the requisite sentencing factors before imposing Ms. Kendall's sentence.

ASSIGNMENT OF ERROR II

The trial [court] denied Ms. Kendall due process of law by failing to provide its reasons for imposing consecutive sentences. Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution.

ASSIGNMENT OF ERROR III

The trial court erred by imposing non-minimum, consecutive sentences in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution. Fifth, Sixth, and Fourteenth

6

>Amendments to the Untied States Constitution; *Blakely v. Washington* (2004), 542 U.S. 296; *United States v. Booker* (2005), 543 U.S. 220.
>
>ASSIGNMENT OF ERROR IV
>
>The trial court committed plain error and denied Ms. Kendall due process of law by imposing non-minimum and consecutive sentences. Fifth and Fourteenth Amendments to the United States Constitution; Section 16, Article I of the Ohio Constitution.
>
>ASSIGNMENT OF ERROR V
>
>The trial court did not have the authority to impose a non-minimum sentence.

*State v. Kendall,* Nos. 06AP-1139, 06AP-1140, 2007 WL 3072636, at *1-2 (Ohio App. 10th Dist. Oct. 23, 2007). On October 23, 2007, the appellate court affirmed the trial court's judgment. *Id.* On March 12, 2008, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Kendall,* 117 Ohio St.3d 1427 (2008).

On February 20, 2009, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. She alleges that she is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

>1. The trial court imposed unconstitutional sentences when it imposed non-minimum, maximum and consecutive sentences against Ms. Kendall in violation of the Ex Post Facto and Due Process Clauses.
>
>    Kendall's criminal conduct took place prior to June 14, 2000. Ms. Kendall was sentenced on June 23, 2006 under a sentencing law that was more harsh than existed at the time

7

>>the conduct took place.
>
>2. Ms. Kendall was denied procedural due process when the trial court failed to provide its reasons for imposing consecutive sentences.
>
>>Ms. Kendall's criminal conduct took place prior to June 14, 2000. In 2000, the sentencing statute, R.C. 2929.19(B)(2)(c), mandated that the trial court give its reasons for imposing consecutive sentences. Ms. Kendall was sentenced on June 23, 2006 and the trial court did not give its reasons for imposing consecutive sentences.

It is the position of the Respondent that Petitioner's claims are without merit.

## MERITS

In claim one, Petitioner asserts that imposition of non-minimum, maximum, and consecutive sentences violated due process and the Ex Post Facto Clause. In claim two, Petitioner asserts that she was denied due process because the trial court failed to articulate its reasons for imposing consecutive terms of incarceration. The state appellate court rejected these claims as follows:

>In *Foster,* the Supreme Court of Ohio held that, under the United States Supreme Court's decisions in *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, and *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, portions of Ohio's statutory sentencing scheme were unconstitutional. Specifically, the court found that R.C. 2929.14(B), which required that express judicial findings be made on the record to overcome a presumption in favor of minimum and concurrent terms, was violative of a criminal defendant's right to have all elements of his offense tried to and passed upon by a jury.
>
>Appellant argues that the remedy adopted by the Supreme Court of Ohio in *Foster,* that is, severance of the unconstitutional portions of R.C. 2929.14(B), operates as an ex post facto law because it inflicts greater punishment upon her than she would have faced pre-*Foster,* when the presumption of a minimum sentence would have applied. In addition, appellant argues that the Supreme Court of Ohio should only have severed the mandatory judicial fact-finding aspects of R.C. 2929.14, and left the presumption of a minimum sentence in place.

> Neither argument is well-taken. We are bound to apply the precedent set by this state's highest court in *Foster* as it is written, and this court has repeatedly reaffirmed as much. *State v. Alexander,* Franklin App. No. 06AP-501, 2006-Ohio-6375; *State v. Fout,* Franklin App. No. 06AP-664, 2007-Ohio-619; *State v. Gibson,* Franklin App. No. 06AP-509, 2006-Ohio-6899. Appellant may not, therefore, argue before this court that we must reshape the expressly-stated statutory severance remedy defined by the Supreme Court of Ohio in *Foster,* either with respect to maintenance of a presumption of minimum sentence or precluding retroactive application of the judicially modified sentencing statement.
>
> Appellant's . . . assignments of error are accordingly overruled.

*State v. Kendall,* 2007 WL 3072636, at *2-3.

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or

9

> involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Court of Appeals for the Sixth Circuit has summarized this standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies it to the facts of the petitioner's case.

*Boykin v. Webb,* 541 F.3d 638, 642 (6th Cir. 2008) (quoting *Williams v. Taylor,* 529 U.S. 362 (2000)). Petitioner has failed to meet this standard here.

In *Hooks v. Sheets,* 603 F.3d 316, 320-21 (6th Cir. 2010), the United States Court of Appeals for the Sixth Circuit rejected the arguments now presented by Petitioner, at least as it applies to imposition of consecutive terms of incarceration:

> The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). The Ex Post Facto Clause, however, provides by its terms that it is applicable only to acts of the Legislature, and " 'does not of its own force apply to the Judicial

Branch of government.' " *Id.* (quoting *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 457. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.* at 458-59.

A state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice,* ---U.S. ----, ---------, 129 S.Ct. 711, 714-15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.* At the time Hooks committed his crimes, Ohio permitted the court to impose consecutive rather than concurrent sentences if it found particular facts, *see* ORC § 2929.14(E)(4), and explained its "reasons for imposing the consecutive sentences," ORC § 2929.19(B)(2)(c). The Ohio Supreme Court nevertheless determined that these statutory provisions violated *Blakely* because they allowed the imposition of longer sentences – consecutive sentences – based upon judicial factfinding. *Foster,* 845 N.E.2d at 491.

Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under *Ice.* Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court. *See Foster,* 845 N.E.2d at 495. Moreover, Hooks was always aware of the potential for consecutive sentences. On re-sentencing post- *Foster* he remained subject to consecutive sentences within the discretion of the court. Since Hooks was *always* subject to

11

> consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns. We need not reach the broader question of whether re-sentencing under *Foster* ever violates the Due Process or Ex Post Facto Clauses because *Foster's* application in Hooks's case does not do so.

*Id.,* at 320-21.  Further, Petitioner's argument has been repeatedly rejected by state and federal courts, including this Court. *See, e.g., Smith v. Brunsman*, 626 F.Supp.2d 786, 793-95 (S.D. Ohio 2009)(application of *Foster* violates neither the due process nor the ex post facto clauses).

Petitioner was aware that she faced consecutive, maximum sentences for her crimes. She faced the same sentencing ranges both prior to and after *Foster*. The trial court's imposition of a non-minimum, maximum and consecutive terms of incarceration after *Foster* did not violate the Due Process or Ex Post Facto Clause. For these same reasons, Petitioner's argument in claim two that the trial court unconstitutionally failed to articulate reasons for the imposition of consecutive terms of incarceration fails. Simply because State law required such findings to be made at the time she committed her crimes, and in a manner that the Ohio Supreme Court later concluded violated the Supreme Court's decision in *Blakely*, does not mean that due process required those same findings to be made at the time of her sentencing.

Petitioner's claims are without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request for a stay of proceedings pending a decision from the United States Court of Appeals for the Sixth Circuit in *Hooks v. Sheets,* 603 F.3d 316 (6th Cir. April 27, 2010), is **DENIED**, as moot.

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                s/ *Elizabeth A. Preston Deavers*
                                                Elizabeth A. Preston Deavers
Date:  February 8, 2011                      United States Magistrate Judge